Michael GUZINSKI, Plaintiff,

v.

Todd HASSELBACH, Defendant.

Civil No. 94–73638.

United States District Court,
E.D. Michigan,
Southern Division.

March 11, 1996.

---

T. Joseph Seward, Cummings, McClorey Davis & Acho, PC, Liovonia, MI, for defendant.

Michael Guzinski, Union Lake, MI, pro se.

### ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

COHN, District Judge.

The Court has reviewed the file and the Magistrate Judge's Report and Recommendation submitted herein and no objections have been filed. The proposed Report and Recommendation of the Magistrate Judge is hereby accepted and entered as the findings and conclusions of the Court.

Now, therefore, defendants' motion for summary judgment is GRANTED and the above case is DISMISSED.

### REPORT AND RECOMMENDATION

PEPE, United States Magistrate Judge.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC"). He filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Defendant filed a motion to dismiss and/or for summary judgment. This motion was referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

BACKGROUND

The facts in this case arise out of plaintiff's arrest and pre-trial detention on March 28, 1994, for operating a vehicle under the influence of intoxicating liquor ("OUIL"). Plaintiff contends that defendant, after conducting a traffic stop of plaintiff's car, verbally abused plaintiff, who refused to take a preliminary breath test. Defendant then handcuffed plaintiff and arrested him. Plaintiff claims the handcuffs were "extra tight." At his deposition, plaintiff acknowledged no injuries from the handcuffs and he was not claiming damages because they were too tight. Guzinski Dep. at 23. Plaintiff was first taken by defendant to the Waterford Police Station, where he used the bathroom once or twice. He was then taken to the Oakland County Jail by defendant.

■ After arriving at the Oakland County Jail, plaintiff contends he told certain officers and the booking clerk that he needed to use the toilet. Defendant removed plaintiff's handcuffs and placed him in a holding cell with other prisoners and he told plaintiff they would let him go to the toilet "in a minute." *Id.* at 33. Defendant left the area. Plaintiff also acknowledged that his § 1983 claim is not challenging this treatment by defendant. *Id.* at 34. After a period in the holding cell, plaintiff was brought to the booking window by county jail staff, where he claims he again expressed a need to use the toilet. Defendant was not involved in escorting plaintiff to the booking area, although he was in the booking room area.

Plaintiff alleges that he started for the rest room, but several officers, including defendant, restrained him. As noted below, defense witnesses contend plaintiff was trying to walk away and went toward the laundry room when defendant and others restrained him and subdued his resistance.[1] Defendant placed plaintiff's arm behind his back, allegedly causing injuries to plaintiff's arm.

Although plaintiff seeks monetary damages for his injuries, he does not specify the legal basis for his claim. Based on these facts, plaintiff's claim appears to be made under the Fourth Amendment's prohibition against the use of excessive force during an arrest, or alternatively under the Fourteenth Amendment's due process standard precluding summary punishment of pre-trial detainees.

A scheduling order gave plaintiff until November 28, 1995, to respond to defendant's motion. Plaintiff has not filed any response.

ANALYSIS

A. *Standard of Review*

1. *Dismissal*

■ In deciding a motion to dismiss, "the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 304 (2d ed. 1990). *See also Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Westlake v. Lucas,* 537 F.2d 857

---

1. It is apparent from plaintiff's deposition that his claim in this lawsuit relates to incidents at the Oakland County Jail and not to his initial arrest. The fact that the handcuffs seemed "extra tight" to plaintiff does not rise to the level of a constitutional violation. Similarly, plaintiff's complaint of verbal abuse does not amount to a constitutional violation. At his deposition, plaintiff stated that defendant "was trying to antagonize me in a nice way." Guzinski Dep., at 27. There was a videotape of plaintiff and defendant while at the Waterford Police Station. Federal courts have consistently held that mere verbal abuse or other forms of "harassment," without more, do not violate the Constitution. *Freeman v. Trudell,* 497 F.Supp. 481, 482 (E.D.Mich.1980) ("allegations of verbal abuse or harassment ... are insufficient grounds for relief under § 1983"). *See also Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979) (holding that jail inmate's allegations that sheriff laughed at him and threatened to hang him failed to state a § 1983 claim); *Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir.1975) (affirming dismissal of § 1983 complaint alleging prison employee called plaintiff inmate an obscene name); *Rahman v. Stephenson,* 626 F.Supp. 886, 888 (W.D.Tenn.1986) ("It is well-settled that mere threats, abusive language or verbal harassment by prison officials do not support liability under 42 U.S.C. § 1983"); *Batton v. State Gov't of North Carolina,* 501 F.Supp. 1173, 1180 (E.D.N.C.1980) (verbal abuse); *Boston v. Stanton,* 450 F.Supp. 1049, 1055 (W.D.Mo.1978) ("harassment"). A verbal threat would be actionable under § 1983 only if it amounts to an assault, results in physical harm, or is part of a pattern of unnecessary and wanton abuse. *See, e.g., Parrish v. Johnson,* 800 F.2d 600 (6th Cir.1986).

(6th Cir.1976). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### 2. Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See also Lenz v. Erdmann Corp.,* 773 F.2d 62 (6th Cir.1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986); *Bouldis v. United States Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir.1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986):

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

### B. Excessive Force

■ The claim that defendant used unreasonable force is governed by *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989):

Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person. This much is clear from our decision in *Tennessee v. Garner,* [471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1].... Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard rather than under a "substantive due process" approach.

*Id.* at 394–95, 109 S.Ct. at 1871.

In the present case, the alleged constitutional violations occurred at the point after arrest but before booking for plaintiff's overnight detention. In *Graham,* the Supreme Court left open the question "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins ..." *Id.* at 395 n. 10, 109 S.Ct. at 1871 n. 10.

■ While I find no case in which the Sixth Circuit has addressed this issue, other courts and strong policy arguments would extend Fourth Amendment protections after arrest until a judicial officer has made a determination on probable cause and the issue of pre-trial release or detention.[2] Al-

---

2. *See, e.g., Austin v. Hamilton,* 945 F.2d 1155, 1162 (10th Cir.1991) (holding that the Fourth Amendment's objective reasonableness standard applies after an arrest up to the arrested sus-

though the Fourth Amendment reasonableness standard may no longer be applicable to pre-trial detainees who have been detained after a judicial hearing,[3] there is no reason to use a different standard from the Fourteenth Amendment in this case. Plaintiff had been arrested, processed at the police station and brought to the jail for booking and detention. While the defendant patrolman had turned plaintiff over to the jailers, plaintiff had not yet been booked. It was during the booking process that defendant and jail officials became involved together to subdue plaintiff. He was, in effect, in their *joint* custody at the time of this alleged unconstitutional treatment.[4] Even if this Court were not to extend Fourth Amendment protections until the time of the first judicial review, courts have treated the completion of the booking process as the point where "arrest" ends and "detention" begins.[5]

■ In the present case, it is not clear that the applicable standard of review would actually be different under the Fourteenth Amendment. Even if the Fourteenth Amendment protections for pre-trial detainees against punishment without due process were applied, the question for decision, when the challenged behavior is not admitted to be "punishment," is whether the challenged be-havior actually is "punishment." The answer to this question turns on (1) whether there is a legitimate governmental purpose other than punishment that is being served by the challenged behavior, and (2) whether the challenged behavior is reasonably related to that purpose. *Bell v. Wolfish,* 441 U.S. 520, 538, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). The second prong of this test is a *reasonableness* test markedly similar, if not identical, to that of the Fourth Amendment.[6] Here the challenged action was not admitted to be punishment but rather an effort to restrain plaintiff, who was attempting to leave. This is a legitimate governmental purpose and if the force used is "reasonably related to a legitimate governmental objective, it does not ... amount to 'punishment.'" *Id.*

■ Again, defendant Hasselbach's application of force to subdue plaintiff at the Oakland County Jail is to be evaluated under the Fourth Amendment.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at

pect's first judicial hearing); *Hammer v. Gross,* 884 F.2d 1200, 1204 (9th Cir.1989), *vacated on other grounds,* 932 F.2d 842 (9th Cir.1991) (en banc) (Fourth Amendment applies to force used to compel drunk driving arrestee to consent to chemical tests because the force constituted a search incident to arrest).

3. *See, e.g., Valencia v. Wiggins,* 981 F.2d 1440, 1443–44 (5th Cir.1993) (not applying the Fourth Amendment standard to a pre-trial detainee who had been in detention for "a significant period of time" (three weeks)).

4. *See, e.g., Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989) ("We think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer.").

5. *See, e.g., Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir.1990) (the court assumed that the arrestee's "presence in the jail and completion of the booking marked the line between 'arrest' and 'detention' ").

6. *Bell,* 441 U.S. at 538, 99 S.Ct. at 1873–74. The court further explained that

absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Kennedy v. Mendoza–Martinez,* 372 U.S. [144], at 168–169, 83 S.Ct. [554] at 567–568 [9 L.Ed.2d 644 (1963)]; see *Flemming v. Nestor, supra,* 363 U.S. [603], at 617, 80 S.Ct. [1367] at 1376 [4 L.Ed.2d 1435 (1960)]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* (footnote omitted).

stake. [*Garner*, 471 U.S.] at 8, 105 S.Ct. at 1699, quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S. [1,] 22–27, 88 S.Ct. [1868, 1880–83, 20 L.Ed.2d 889 (1968)]. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72 (citations omitted).

The government has a legitimate interest in detaining arrestees pending hearings on bail and probable cause. Similarly, an intoxicated driver who was legitimately arrested can be detained until the next morning before release on bond to allow him to sober up. In this case, the evidence submitted by defendant shows plaintiff was arrested for speeding and erratic driving at about 11:37 p.m. The police preliminary complaint report indicates that plaintiff was very drunk. He had a prior drunk driving conviction and later acknowledged his guilt on this charge by pleading guilty to the OUIL charge. Plaintiff flunked all the field sobriety tests. He refused a breathalyzer test both at the scene of the arrest and later at the police station. He was taken to the Oakland County Jail pending his release on $100 bond the next morning.

Plaintiff has submitted no response to defendant's motion to dismiss and/or for summary judgment. Ordinarily, a non-movant cannot simply stand on the pleadings when a summary judgment motion has been filed and must respond with an affidavit or other evidence to show the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e). Because plaintiff has filed a verified complaint, however, I will treat his complaint as an affidavit. *See, e.g., Hooks v. Hooks*, 771 F.2d 935, 945–46 (6th Cir.1985) ("[W]e note that since plaintiff's complaint was verified, to the extent that the allegations therein are based on personal knowledge, it satisfies the requirements of Rule 56(e) as an opposing affidavit."). Nevertheless, most of defendant's submissions in support of his motion have not been rebutted.

■■■ The Supreme Court in *Graham* stressed that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396, 109 S.Ct. at 1872. In the present case, three key facts support defendant's claim that reasonable force was used to restrain plaintiff. First, plaintiff's arm was twisted behind his back only after he ignored verbal admonitions not to walk away. Deputy Taylor testified that he twice yelled at plaintiff to return to the booking window, but plaintiff ignored these commands. Taylor Dep. at 9. Deputy Taylor stated: "I can't swear to it but I can almost hear [plaintiff] say, 'That's it, I'm out of here,' and [he] took off." *Id.* at 9. Booking clerk Michelle Wellman also stated that she believed both she and Deputy Taylor told plaintiff to come back. Wellman Dep. at 11. Wellman further testified that the following events took place while she was questioning plaintiff at the booking window:

WELLMAN: We got to a question and he didn't want to answer it. I asked him probably three times; and all of a sudden, he decided he was going to walk away and head back to the laundry area.

QUESTION: How do you know that he decided to do that?

WELLMAN: He just walked away and headed back to laundry. I don't know his exact reasoning or why. I think he though, "I'm done."

QUESTION: Did he verbalize any way to you that he was going to do what he did?

WELLMAN: No.

QUESTION: So he just—all of the sudden, you are asking him a question and he is walking away, is that what happens?

WELLMAN: That's correct.

Wellman Dep. at 10–11. Wellman noted that defendant "was the closest one, so he went after [plaintiff], grabbed him by the back of the shirt ..." *Id.* at 11. A reasonable officer would view plaintiff's attempt to walk away from the booking window as an effort to escape, or at a minimum an effort to disrupt the booking process.

Second, plaintiff resisted the officers' attempts to restrain him, which is further evidence of an attempt to escape or break free and not cooperate with the booking process. Deputy Schroeder, one of the officers who assisted in restraining plaintiff, testified that plaintiff was "resisting by swinging his arms and attempting to break free from us and keep going where he was walking to." Schroeder Dep. at 22. He further testified that plaintiff continued to resist even after being forced to lie in a prone position on the floor. *Id.* at 20–21. Even then, plaintiff did not cease his resisting:

QUESTION: Did anybody ever take his— either one or both of his arms and try to wrench it behind his back?

SCHROEDER: No, No. He was pulling his arms away. For our control, we would put his arms behind.

QUESTION: As if to handcuff him?

SCHROEDER: Right, but as far as wrenching, no. He kept pulling his arms away. That's when we made the decision just to carry him into the DTU.

QUESTION: So any wrenching of his arms was due to his attempts to break free of the grasp of the officers?

SCHROEDER: Yes, yes.

QUESTION: At any point in time, did you see Officer Hasselbach do anything inappropriate?

SCHROEDER: No.

*Id.* at 22.

Deputy Taylor also testified that plaintiff had almost entered the laundry area when defendant grabbed him:

TAYLOR: ... Patrolman Hasselbach had him by the collar and he swung back around. I don't know if he had a clenched fist or open fist.

QUESTION: He being?

TAYLOR: Guzinski. He swung back around.

QUESTION: Was this an action by Guzinski to swing around?

TAYLOR: Yes. He swung around on Hasselbach and, at that time, just about simultaneously, the officers from the laundry area and receiving area gathered, rushed him, took him to the ground.

Taylor Dep. at 9–10.

Finally, it is worth noting that plaintiff was not handcuffed when he walked away from the booking window and could reasonably be perceived both as a flight risk prior to restraint and as a threat to police officers at the time they attempted to restrain him. There is no evidence that defendant's forceful actions continued in any way once plaintiff was finally placed in the detoxification cell and thus secured. Deputy Schroeder confirmed that if plaintiff wrenched his arm, it was from his attempt to break free from the officers' grasp. Schroeder Dep. at 22. Based on this evidence, which has not been rebutted, no reasonable jury could find the actions of defendant and other officers in twisting plaintiff's arm behind his back were anything other than a reasonable attempt to restrain him.

As noted above, plaintiff did not file a response to defendant's motion and thus has failed to produce any counter-evidence to rebut defendant's claims. His verified complaint states that defendant grabbed his left wrist and twisted it behind his back, and when plaintiff was wrestled to the floor defendant said "I'll [break] it off if you move." Plaintiff then states: "I did not [resist]. My arm has been badly injured. I am still [receiving] medical treatment for this injury to date." Complaint, p. 5. While plaintiff asserts that his arm was badly injured, he has not provided any evidence that he sought medical treatment or that medical treatment was necessary or appropriate based on his alleged injuries.

Because plaintiff has presented no counter-evidence whatsoever to defendant's motion and plaintiff's complaint lacks any detail and is conclusory, this is not a case which should be submitted to a jury. There is no evidence to counter the defendant's submission that plaintiff was leaving the booking area contrary to instructions. There is no evidence that defendant did anything to plaintiff once he was placed in the detoxification cell. There is no evidence of an injury or any need for medical treatment other than plaintiff's unsupported assertion. This claim was filed in September of 1994. There has been adequate time for discovery. It is unclear if plaintiff has any interest in pursuing this matter.[7] Based on the current record, defendant is entitled to summary judgment.[8]

### C. *Qualified Immunity*

Defendant asserts that he is entitled to qualified immunity. Because I recommend that summary judgment be entered in defendant's favor, it is unnecessary to discuss this qualified immunity issue any further. *See Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

*RECOMMENDATION*

For the reasons stated above, it is recommended that defendant's motion to dismiss and/or for summary judgment be granted.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D.Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466,

88 L.Ed.2d 435 (1985); *Ivey v. Wilson,* 832 F.2d 950, 957–58 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: Feb. 02, 1996.
    Ann Arbor, Michigan

---

7. Plaintiff was still in jail when this lawsuit was filed. He was subsequently released and provided defense counsel with his new address (a post office box in Union Lake, Michigan) several months before defendant's motion was mailed. The mailing was not returned and is presumed to have been received. Defense counsel filed an affidavit stating that defendant's motion was sent to the Union Lake post office box, and the Notice of Hearing attached to defendant's motion lists that post office box as the address to which the notice and motion were sent.

8. Because plaintiff has insufficient evidence to show that defendant violated the reasonableness standard of the Fourth Amendment, this Court need not address any substantive due process

claim under the Fourteenth Amendment. While *Graham v. Connor, supra,* refused to decide what differences might exist between the Fourth and Fourteenth Amendment standards, it seems clear that the Fourth Amendment "reasonableness" standard provides greater protection to individuals from excessive government actions than does the Fourteenth Amendment. If plaintiff fails to provide sufficient evidence to get to a jury on a Fourth Amendment claim, he would also not make out a Fourteenth Amendment claim. If defendant's behavior is "reasonable" under the Fourth Amendment, it is inconceivable that that behavior could "shock the conscience" under the Fourteenth Amendment substantive due process test.