**Arthur JOHNSON, Jr., Plaintiff,**

v.

**James FREEBURN, Defendant.**

No. 96–CV–74996–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 1998.

Arthur Johnson Jr., Ionia, MI, pro se.

Terry L. Norton, Michigan Department of Attorney General, Lansing, MI, Lamont M. Walton, Michigan Department of Attorney General, Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Magistrate Judge Steven D. Pepe's Report and Recommendation dated August 26, 1998. To date, no objections have been filed to the Report and Recommendation.

The only remaining defendant in this matter is Defendant James Freeburn. On September 29, 1997, the Court entered an Order accepting the Magistrate Judge's August 28, 1997 Report and Recommendation dismissing all of the defendants except Defendant James Freeburn. The Court agreed with the Magistrate Judge's conclusion that Plaintiff has stated a claim of retaliation in violation of his First Amendment rights against Defendant Freeburn. Discovery proceeded in this matter and Defendant Freeburn has now filed a Rule 12(b)(6) motion to dismiss and/or Rule 56 motion for summary judgment.

The Court has had an opportunity to review the matter and finds that the Magistrate Judge reached the correct conclusion for the proper reasons. The Court agrees with the Magistrate Judge that Plaintiff has stated a claim of retaliation in violation of his First Amendment rights against Defendant Freeburn and that the supplemental evidence submitted by Defendant Freeburn was not conclusive on the issue. There remains a genuine issue of material fact on the retaliation claim. The Court further agrees with the Magistrate Judge that because Plaintiff has served the sanction imposed on him by the hearing officer, he was not "in custody" when he filed the instant claim against Defendant Freeburn. The instant suit is not

precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) pursuant to the reasoning set forth in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

Accordingly,

IT IS ORDERED that Magistrate Judge Steven D. Pepe's Report and Recommendation dated August 26, 1998 is ACCEPTED and ADOPTED as this Court's findings of fact and conclusions of law;

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss and/or for Summary Judgment (**Docket Nos. 36–1 and 36–2, filed February 13, 1998**) is DENIED;

IT IS FURTHER ORDERED that the retaliation claim under the First Amendment remains against Defendant Freeburn;

IT IS FURTHER ORDERED that an attorney be appointed to prepare for and represent Defendant Freeburn at trial; and

IT IS FURTHER ORDERED that a Status Conference be held on this matter on Monday, January 11, 1999, 2:30 p.m.

## REPORT AND RECOMMENDATION

PEPE, United States Magistrate Judge.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections. He filed this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants previously filed a motion to dismiss or for summary judgment in this case. Defendants' motion to dismiss was granted in part and denied in part. Defendants' motion for summary judgment was denied without prejudice as premature in order to allow plaintiff to take discovery on material issues of fact. The remaining defendant, James Freeburn, has now filed a second Rule 12(b) Motion for Dismissal and Rule 56(b) Motion for Summary Judgment. This motion has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For reasons stated below, it is recommended that defendant Freeburn's motion to dismiss and/or for summary judgment be denied.

## II. BACKGROUND

A brief summary of the alleged retaliation claims against defendant Freeburn is all that is necessary here. Plaintiff has alleged that on August 28, 1995, defendant Freeburn threatened plaintiff's life. Later the same day, plaintiff was standing in front of RUM Beckwith's office, informing her of this threat by Freeburn and asking her to transfer him to another unit. Plaintiff alleges that the complaint to RUM Beckwith was made in defendant Freeburn's presence. In response, defendant Freeburn allegedly retaliated against plaintiff by (1) calling the gun tower officer, telling him that plaintiff refused to go back to his cell and instructing the officer to shoot plaintiff if he moved, and (2) having plaintiff wrongfully placed in administrative segregation for four days for refusing to lock in. In my earlier Report and Recommendation, I concluded that plaintiff had stated a claim of retaliation against defendant Freeburn under the *Cale v. Johnson*, 861 F.2d 943 (6th Cir.1988), standard because (1) plaintiff alleged that he engaged in conduct—seeking redress of grievances—that is protected by the First Amendment; and (2) defendant Freeburn engaged in retaliatory conduct sufficiently grievous to constitute an egregious abuse of authority or shock the judicial conscience. Report and Recommendation, dated August 28, 1997, pp. 17–18. Moreover, I concluded that defendant Freeburn was not entitled to qualified immunity. *Id.* at p. 28. In a September 29, 1997, Memorandum Opinion and Order, Judge Hood accepted my Report and Recommendation and ordered that plaintiffs retaliation claim remain against defendant Freeburn and that defendant Freeburn's motion for summary judgment be denied without prejudice pending discovery on this issue.

Defendant Freeburn has now filed a second motion to dismiss or for summary judgment. With the initial dispositive motion, defendant Freeburn submitted an affidavit, in which he attests that he called the gun tower officer because plaintiff was refusing to "lock down" and that at no time did he tell the gun tower officer to shoot plaintiff. Defendant Freeburn has now submitted additional evidence to support his argument that

he did not tell the gun tower officer to shoot plaintiff.

## III. STANDARD OF REVIEW

### A. Dismissal pursuant to Fed.R.Civ.P. 12(b)(6)

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept all well-pleaded allegations as true and construe them in the light most favorable to plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 117, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 304 (2d ed.1990). *See also Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is also well established, however, that conclusory, unsupported allegations of constitutional deprivation do not state a claim.[1]

Finally, a court may decide a motion to dismiss only on the basis of the pleadings. *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir.1993). Dismissal is appropriate if the complaint fails to set forth an allegation of a required element of a claim. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489–90 (6th Cir.1990). The court may treat the motion to dismiss as one for summary judgment, however, if "matters outside the pleading are presented to and not excluded by the court." Fed.R.Civ.P. 12(b).

### B. Summary judgment

Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir.1985). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case nec-

---

1. *See, e.g., Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir.1987) ("[T]he allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim."), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986) ("It is not enough for a complaint ... to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985) (conclusory, unsupported allegations insufficient to state a claim); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (dismissal of complaint appropriate if allegations of constitutional deprivation are "mere conclusions"); *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981) ("[T]his court has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs."); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir.1971) ("A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions."); *Borenstein v. City of Philadelphia*, 595 F.Supp. 853, 856 (E.D.Pa.1984) ("[C]ivil rights complaints must be pleaded with specificity and may not merely make conclusory allegations of constitutional deprivations or the existence of municipal policies."); *Egan v. Concini*, 585 F.Supp. 801, 803 (M.D.Pa.1984) (factual specificity required in order to enable court to evaluate substance of claim).

essarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

## IV. ANALYSIS

### A. The claim that defendant Freeburn instructed the gun tower officer to shoot plaintiff if he moved

Defendant Freeburn argues that the evidence presented in this case does not create a material issue of fact for trial. In the first motion to dismiss or for summary judgment, defendant Freeburn denied that he told the gun tower officer to shoot plaintiff if he moved. In his affidavit, submitted with the original dispositive motion, defendant Freeburn stated "I may have gotten on the phone to inform the gun turet as to what was going on. At no time did I tell him to shoot Plaintiff if he moved...." Freeburn Aff., ¶ 5. Second, defendant Freeburn argues that former defendant Beckwith's original affidavit also counters plaintiff's allegations. In her affidavit, Beckwith stated "I found nothing to substantiate Plaintiff's claims...." Defendant Freeburn's Motion, Exhibit B, Beckwith January 4, 1997, Aff., ¶ 4. Defendant Freeburn also proffers Beckwith's supplemental affidavit, in which she states in ¶ 6:

> Plaintiff states that as he was telling me about Sgt. Freeburn threatening him earlier on August 25, [1995], he heard Sgt. Freeburn talking on the phone to the officer in the gun turret. Based on the location of the base office, and where the phone was at the officer's station that Plaintiff states Sgt. Freeburn was using, and the noise level in this area, in my opinion it would be most difficult for Plaintiff to be talking to me at the base office, and hearing Sgt. Freeburn at the same time.

Beckwith Supplemental Aff., ¶ 6.

Defendant Freeburn also states that when plaintiff filed a grievance detailing the alleged events of August 28, 1995, plaintiff never mentioned that he heard defendant Freeburn tell the gun tower officer to shoot plaintiff if he moved, nor did plaintiff mention defendant Freeburn's alleged comment when he filed his Step II and Step III appeals. Copies of plaintiff's grievance and appeals were attached to former defendant Taylor's affidavit, which was submitted with the original dispositive motion. Defendant Freeburn also attaches copies of these documents to the present motion as Exhibit A. Defendant Freeburn notes, however, that plaintiff did write a handwritten message to the grievance office, in which he states that Freeburn told the gun tower officer to shoot him if he moved. Plaintiff submitted a copy of this letter with his complaint. Plaintiff's letter is dated October 3, 1995, and it is stamped "RECEIVED" with the date of October 4, 1995. The date of plaintiff's letter demonstrates that it was written and received by the grievance officer prior to plaintiff filing his Step II appeal, which is dated October 12, 1995. Defendant Freeburn argues that the fact that plaintiff failed to mention defendant Freeburn's order to shoot in his grievance or at the misconduct hearing refutes plaintiff's allegation and provides evidentiary support to defendant Freeburn's affidavit, denying that he ordered the gun tower officer to shoot plaintiff.

In my August 28, 1997, Report and Recommendation, I stated:

> Even if the Court were to consider the evidence defendants have offered to counter plaintiff's claim, however, defendants would not prevail on their motion for summary judgment. Defendant Freeburn states, in an affidavit attached to defendants' dispositive motion, that he called the gun tower officer because plaintiff was refusing to "lock down" and that at no time did he tell the gun tower officer to shoot plaintiff. Plaintiff's allegations may be taken as evidence because they are contained in a verified complaint, which constitutes an opposing affidavit under Fed. R.Civ.P. 56(e), *Hooks v. Hooks*, 771 F.2d 935, 945–46 (6th Cir.1985); *Guzinski v. Hasselbach*, 920 F.Supp. 762, 767 (E.D.Mich.1996). His allegations do state a claim, and Freeburn's affidavit denying them simply creates a disputed issue of fact, the resolution of which is for the trier of fact. *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir.), *cert. denied*, [513 U.S.

1001,] 115 S.Ct. 512 [,130 L.Ed.2d 419] (1994).

Report and Recommendation, dated August 28, 1997, p. 18. Defendant Freeburn has offered additional evidence, Beckwith's supplemental affidavit. Therefore, it must be determined whether, in light of this additional evidence, a reasonable trier of fact could find for plaintiff.

 I believe that if a reasonable jury found plaintiff's credibility to be greater than defendant Freeburn's or former defendant Beckwith's, it could find in favor of plaintiff as to this claim. Beckwith's supplemental affidavit, stating that in her opinion "it would be most difficult for Plaintiff to be talking to me at the base office, and hearing Sgt. Freeburn at the same time[,]" may or may not tip the credibility scale in favor of defendant Freeburn, but it does not eliminate a disputed question of fact. Plaintiff's allegation that he heard defendant Freeburn tell the gun tower officer to shoot him may be taken as evidence because it is contained in a verified complaint. Therefore, there remains an issue of material fact in dispute as to whether defendant Freeburn did in fact make this statement. Moreover, the evidence proffered by defendant Freeburn that plaintiff did not address defendant Freeburn's order to shoot in his grievance or at the misconduct hearing does not eliminate the disputed issue of material fact in favor of defendant Freeburn. Defendant Freeburn can present this evidence at trial to show a prior inconsistent statement by plaintiff, which goes to plaintiff's credibility. However, in light of this conflicting evidence, this issue is reduced to a credibility dispute, which is not appropriately resolved on a motion for summary judgment. *Harris v. City of Akron,* 20 F.3d 1396, 1403 (6th Cir.1994), *cert. denied,* 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419. Therefore, defendant Freeburn's motion for summary judgment as to this issue should be denied.

B. *The claim that defendant Freeburn retaliated against plaintiff by wrongfully issuing a Major Misconduct Report*

1. Plaintiff's Claim of Retaliation:

Plaintiff has alleged that defendant Freeburn retaliated against him by issuing a Major Misconduct Report charging him with disobeying a direct order, resulting in plaintiff being placed in administrative segregation. Defendant Freeburn directs the Court's attention to documentation attached to his affidavit, which was submitted with the February 7, 1997, dispositive motion. The hearing officer found plaintiff guilty of disobeying a direct order given by defendant Freeburn on the grounds that defendant Freeburn gave a reasonable order to go to his cell and lock in and plaintiff heard and understood the order but refused to go immediately to his cell and lock in. Freeburn Aff., Exhibit 25.

If plaintiff were to prevail on this § 1983 claim against Freeburn, the necessary logical implication would be that the hearing officer in his misconduct determination was factually wrong in finding that plaintiff disobeyed Freeburn. A successful § 1983 verdict on plaintiff's claim that the ticket was written for a retaliatory purpose would undermine the finding that the ticket was legitimately written for violation of prison disciplinary rules related to prison order and staff security. Thus, a jury could conclude that Freeburn's writing of it was an egregious abuse of authority. Defendant argues that a § 1983 action cannot be pursued if a successful plaintiff's verdict would implicitly undermine the factual findings that support punishment imposed in a prison disciplinary matter. Defendant relies on *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 1585–87, 137 L.Ed.2d 906 (1997), which expanded the holding of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

2. Background Case Development:

In *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a state prisoner brought an action under 42 U.S.C. § 1983 for injunctive relief to restore good-time credits lost as a result of disciplinary proceedings. The Supreme Court noted that when the general provisions of § 1983 overlap with the specific provisions of the habeas corpus statute under 28 U.S.C. § 2254, habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though

such a claim may come within the literal terms of § 1983.

The *Preiser* approach avoids two potential conflicts that could occur if a § 1983 case could be initiated when a § 2254 habeas action was available. First, Congress, out of concern for federalism requires habeas petitioners to exhaust state remedies in order to give state courts the opportunity to correction any federal constitutional error before the federal courts can exercise jurisdiction. If a § 1983 action, which has no such exhaustion requirement, could be brought before a habeas action, this Congressional policy deferring initially to state courts would be eviscerated. Second, if a § 1983 action could be brought while a state criminal appeal or other remedy was available or being pursued, a § 1983 judgment that was entered prior to the conclusion of the state proceedings would have issue preclusive effect on critical overlapping factual questions between the two cases. Important principles of federalism would again be involved were this to occur and federal courts could legally bind state courts on such factual determinations.

These problems of potential conflict between § 1983 and habeas or state criminal proceedings arose again in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, an inmate, while appealing his murder conviction, brought a § 1983 action against the prosecutors and state police investigators alleging an unlawful investigation, knowing destruction of evidence, including exculpatory evidence that would have proven his innocence, and the use of an illegal and unlawful voice identification procedure at his trial. Instead of seeking injunctive relief for the loss of his good-time credits as was involved in *Preiser*, Roy Heck sought monetary damages, and not release, for his allegedly unlawful conviction and incarceration. The plaintiff argued that monetary damages were not available in habeas actions and referred to dictum in *Preiser* which indicated that a state prisoner seeking only damages "is attacking something other than the fact or length of ... confinement, and ... seeking something other than immediate or more speedy release ..." *Preiser*, 411 U.S. at 494, 93 S.Ct. 1827. Thus, *Preiser* concluded "a damages action by a state prisoner could be brought under

[§ 1983] in federal court without any requirement of prior exhaustion of state remedies." *Preiser*, 411 U.S. at 494, 93 S.Ct. 1827. In *Heck*, a majority opinion written by Justice Scalia, joined by Justices Rehnquist, Kennedy, Thomas, and Ginsburg noted that this dictum in *Preiser* was not always true. It held that in certain § 1983 actions a claim, even if seeking only monetary damages and not injunctive relief or release from custody or a restoration of good-time credit, would nonetheless be "attacking ... the fact or length of ... confinement" bringing the suit within the scope of *Preiser*. *Heck*, 512 U.S. at 482, 114 S.Ct. 2364. The majority opinion held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit [such as federal abstention of a civil action pending a state charge].

*Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364 (footnotes omitted) (emphasis supplied).

Justice Scalia in his majority opinion made it clear that he was not engrafting an ex-

haustion requirement upon § 1983 but rather denying the existence of a § 1983 cause of action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489, 114 S.Ct. 2364. Instead of interpreting *Preiser* as merely a choice of the appropriate federal *remedy* for a person challenging the fact or duration of confinement while still "in custody," Justice Scalia's majority analogized to malice prosecution cases at common law that required as an *element* of the cause of action that there be a "termination of the prior criminal proceeding in favor of the accused." *Id.* at 484, 93 S.Ct. 1827. The majority opinion has been read as creating a similar and new prima facie *element* in a § 1983 action brought by a prisoner if the nature of the prisoner's constitutional claim "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487, 93 S.Ct. 1827.

Justice Souter in an opinion joined at the time by Justices Blackmun, Stevens, and O'Connor agreed with the majority that the common law can be used as a starting point for interpretation of the civil rights statute, but that it should not be the end point, and that the precise contours of § 1983 should not "be slavishly derived from the often arcane rules of common law." *Id.* at 493, 93 S.Ct. 1827 (quoting *Anderson v. Creighton,* 483 U.S. 635, 645, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Justice Souter's opinion criticizes the majority opinion, noting:

> [T]he Court appears to take the position that the statutes [§ 1983 and § 2254] were never on a collision course in the first place because, like the common-law tort of malicious prosecution, § 1983 requires (and, presumably, has always required) plaintiffs seeking damages for unconstitutional conviction or confinement to show the favorable termination of the underlying proceedings.

*Id.* at 492, 114 S.Ct. 2364. Justice Souter notes that other portions and other prima facie elements of malicious prosecution common law were not being incorporated into § 1983 law by the majority opinion because they would be inconsistent with protecting civil rights—the primary purpose of the civil rights law when adopted in 1871 during the Reconstruction era. *See generally id.* at 493–96, 114 S.Ct. 2364.

Justice Souter, instead of resorting to the common law as a framework for defining § 1983, urged a continuation of "the interpretative methodology employed in *Preiser*" to resolve the potential conflict of a § 1983 action which, as noted above, either (i) avoids the exhaustion requirement of § 2254, or (ii) has potential issue preclusive effect on factual findings concerning the fact or duration of confinement in proceedings that are still pending or later commenced in state court. Justice Souter noted:

> In *Preiser,* we read the "general" § 1983 statute in light of the "specific federal habeas corpus statute," which applies only to "person[s] in custody," 28 U.S.C. § 2254(a), and the habeas statute's policy, embodied in its exhaustion requirement, § 2254(b), that state courts be given the first opportunity to review constitutional claims bearing upon a state prisoner's release from custody. 411 U.S., at 489, 93 S.Ct. at 1836. Though in contrast to *Preiser* the state prisoner here seeks damages, not release from custody, the distinction makes no difference when the damages sought are for unconstitutional conviction or confinement.

*Id.* at 497, 114 S.Ct. 2364. He notes that the malicious prosecution tort's "favorable-termination" requirement is a helpful tool for implementing § 1983 in a manner consistent with § 2254 and providing "a relatively simple way to avoid collisions at the intersection of habeas and § 1983." He would not create an additional *element* of a § 1983 prima facie case for persons who were not "in custody" and thus had no habeas remedy, even if the § 1983 judgement could involve a factual finding that would suggest the invalidity of that individual's prior state conviction. He notes that to do this

> would needlessly place at risk the rights of those outside the intersection of § 1983 and the habeas statute, individuals not "in custody" for habeas purposes. If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of

their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason ... is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Id.* at 500, 114 S.Ct. 2364.

Thus, Justice Souter determined that while it made sense to require inmates who had available a habeas corpus federal remedy to pursue that remedy before recourse to § 1983:

It would be an entirely different matter, however, to shut off federal courts altogether to claims that fall within the plain language of § 1983, "[I]rrespective of the common law support" for a general rule disfavoring collateral attacks, the Court lacks the authority to do any such thing absent unambiguous congressional direction where, as here, reading § 1983 to exclude claims from federal court would run counter to "§ 1983's history" and defeat the statute's "purpose."

*Id.* at 501, 93 S.Ct. 1827 (citing *Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)).

In 1997, the Court in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), encountered a prisoner § 1983 claim asserting that the prison disciplinary hearing procedures employed by the state officials that led to his 10 days in isolation, 20 in segregation and the loss of 30 days good-time credit violated due process. Plaintiff Balisok sought compensatory and punitive damages "for use of the unconstitutional procedures." Unlike *Heck* where the plaintiff sought damages for his unlawful conviction and confinement, the plaintiff in *Balisok* was requesting "damages for depriving him of good-time credits without due process, not for depriving him of good-time credits *undeservedly* as a

substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was." 117 S.Ct. at 1587 (footnote omitted) (emphasis added).

The majority opinion in *Balisok* by Justice Scalia, joined by all members of the Court, noted that *nominal* damages could be recovered in § 1983 for the deprivation of due process. These damages were different than the damages that would be sought for an improper incarceration due to a wrongful conviction as had been sought in *Heck.* Yet, the *Balisok* Court held that *Heck* applies not only to claims "to recover damages for allegedly unconstitutional conviction or imprisonment," but also to claims *"for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." Id.* at 1588 (quoting *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364) (emphasis in original). In *Balisok,* as in *Heck,* the petitioner asserted that exculpatory evidence was improperly excluded from his hearing, and his hearing was held before a biased hearing officer. Thus, the Supreme Court majority opinion noted that the "principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* 117 S.Ct. at 1588. Either the procedural defect on exculpatory evidence or on having a hearing before a biased hearing officer would lead state or federal courts to reinstate good-time credits that were deprived by such procedures. Thus, the Court concluded that: "respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 1589.

In a concurring opinion by Justice Ginsburg joined by Justices Souter and Breyer, it was noted that they joined the majority opinion because Balisok's claim did "necessarily imply the invalidity of the punishment imposed." They added, however, that other procedural defects that Balisok raised, such as the failure of hearing officer Edwards "to specify what facts and evidence supported the finding of guilt" (quoting App. to Pet. for

Cert. F–3 (District Court Order)), as required by the Supreme Court in its earlier procedural due process case of *Wolff v. McDonnell,* 418 U.S. 539, 564–65, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), "would not necessarily imply the invalidity of the deprivation of his good-time credits, and therefore is immediately cognizable under § 1983." 117 S.Ct. at 1589.

Thus, in sum, *Preiser* held that an inmate cannot use a § 1983 injunction claim to challenge the fact or duration of his confinement due to the deprivation of good-time credits. *Heck* added that a prisoner could not use a § 1983 money damages claim for an allegedly unconstitutional conviction or imprisonment without first invalidating that conviction in situations where a successful § 1983 "judgment in favor of the plaintiff would necessarily imply the invalidity or his conviction or sentence." *Heck,* 512 U.S. at 487, 114 S.Ct. 2364. *Balisok* extended this principle to hold that the nature of the relief sought is not the critical question, but rather whether the grounds for that relief "would, if established, necessarily imply the invalidity of the [conviction or] deprivation of good-time credits." *Id.* at 1588. In *Balisok,* the prisoner claimed he was seeking the relief of damages for deprivation of his due process rights and no damages or injunctive relief with respect to a "wrongful" deprivation of his good-time credits.

As noted in *Miller v. Indiana Dept. of Corrections,* 75 F.3d 330, 331 (7th Cir.1996), another case involving a prison administrative ruling denying a prisoner good-time credit:

> The reasoning of *Heck v. Humphrey* is that a prisoner should not be able to use a suit for damages to get around the procedures that have been established for challenging the lawfulness of continued confinement. It is irrelevant whether the challenged confinement is pursuant to a judgment imposing a sentence or an administrative refusal to shorten the sentence by awarding good-time credits.... The issue, we emphasize, is not the *relief* sought, but the *ground* of the challenge.

(Emphasis supplied.) *Balisok* makes it clear that if the ground for the challenge was successful and would necessarily imply the invalidity of the determination leading to the incarceration or denial of good-time credits, the appropriate relief is by habeas corpus, if at all, and not under § 1983.

The present case involves a ticket in which inmate Johnson was found guilty. Plaintiff Johnson asserts that the factual grounds for the ticket were illegitimately contrived by defendant Freeburn to retaliate against plaintiff because Freeburn overheard plaintiff complaining to RUM Beckwith about an earlier threat on plaintiff's life that Sgt. Freeburn had allegedly made. This current § 1983 claim would, if successful, necessarily imply the invalidity of the hearing officer's determination that Johnson disobeyed a legitimately given direct order. This Court in the case of *Jackson–El v. Winsor,* 986 F.Supp. 440 (E.D.Mich.1997), held that where an inmate had been found guilty of an infraction involving possessing a knife in his cell, he could not bring a § 1983 claim against a prison guard for planting the knife in the cell and thereby framing him on the prison disciplinary ticket because "a finding that Winsor planted the knife in plaintiff's room and falsified the misconduct ticket would necessarily imply the invalidity of the hearing officer's determination that plaintiff did in fact possess the knife." *Id.* at 440. Thus, applying *Heck* and *Edwards,* this Court determined that a retaliation claim by the plaintiff against the guard who allegedly planted the knife could only succeed if plaintiff did not possess the knife (or know it was in his cell), which would directly contradict the hearing officer's determination that he did in fact possess the knife. Thus, plaintiff did not state a § 1983 action unless and until he had vacated the guilty finding of the hearing officer.

A question that was not raised in *Jackson–El* was the question as to whether or not the availability of habeas relief (or other state relief) was necessary before the *Heck/Balisok* line of cases would be a bar to bringing a § 1983 action. In other words, as in the examples raised in Justice Souter's concurrence in *Heck,* if the inmate was no longer in custody, or had a fine imposed [or had not been deprived of any good-time credit affecting his release date and had already served his period in administrative segregation], so

that neither habeas corpus nor state administrative or court remedies would be available, was the inmate nonetheless precluded from bringing a § 1983 action if findings of fact in that action would necessarily imply the invalidity of the earlier conviction or disciplinary hearing. In such a situation, no parallel state action or potential future state action concerning the fact or duration of custody could be affected by issue preclusion. Thus, the problem that concerned the majority in *Heck* would not exist—a prisoner bringing a § 1983 action in such a situation would not be using it to do an end run on the exhaustion requirements of habeas corpus, nor using it to develop factual findings in a federal court that could be issue preclusive on subsequent state actions challenging the fact or duration of confinement.

This issue presented itself indirectly in a recent case before the United States Supreme Court, *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). In that case, former inmate Randy Spencer brought a habeas corpus action to challenge the validity of a parole revocation. Prior to the completion of his habeas proceedings Spencer was released, having completed his entire term of imprisonment. The primary question before the Supreme Court was whether his habeas case was mooted by his release. The majority opinion by Justice Scalia determined that the habeas action was moot under *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), because plaintiff had been released from custody and could not demonstrate that he suffered any "collateral consequences" from the parole revocation order. 118 S.Ct. at 982. The petitioner argued that the matter was not moot and did have a collateral consequence because *Heck* "would foreclose him from pursuing a damages action under 42 U.S.C. § 1983 unless he can establish the invalidity of his parole revocation...." 118 S.Ct. at 988. Justice Scalia acknowledged that "[i]t is not certain ... that a § 1983 damages claim would be foreclosed" where a challenge to the wrongful procedures used did not implicate a wrong result and thus the § 1983 action would not " 'necessarily imply the invalidity of' the revocation...." 118 S.Ct. at 988.

The significance of *Spencer* lies in the two concurring opinions. The first concurrence was, as in *Heck*, by Justice Souter. It was joined by Justices O'Connor, Breyer, and (unlike *Heck*) by Justice Ginsburg. Justice Souter, noting his concurrence in *Heck*, stated that the petitioner was clearly wrong in arguing that there was a collateral consequence from his parole revocation that would prevent his habeas claim from being moot. Justice Souter stated:

> But he is wrong; *Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for the reason explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such result. For all that appears here, then, Spencer is free to bring a § 1983 action, and his corresponding argument for continuing habeas standing falls accordingly.

*Id.* at 989.

Justice Souter again noted his concerns with an over-broad analogy to malicious prosecution that was used in the *Heck* case. He acknowledged:

> To be sure, the majority opinion in *Heck* can be read to suggest that this favorable-termination requirement is an element of any § 1983 action alleging unconstitutional conviction, whether or not leading to confinement and whether or not any confinement continued when the § 1983 action was filed.... Indeed, although *Heck* did not present such facts, the majority acknowledged the possibility that even a released prisoner might not be permitted to bring a § 1983 action implying the invalidity of conviction or confinement without first satisfying the favorable-termination requirement.

*Id.* at 989. Justice Souter notes that the reasoning in both *Heck* and *Balisok* was to have the general language in the § 1983 statute to defer to

> the "specific" federal habeas statute, which applies only to persons "in custody," 28 U.S.C. § 2254(a).... I agreed that "the statutory scheme must be read as precluding such attacks," ... not because the favorable termination requirement was necessarily an element of the § 1983 cause of action for unconstitutional conviction or

custody, but because it was a "simple way to avoid collision at the intersection of habeas and § 1983."

*Id.* at 989 (quoting *Heck,* 114 S.Ct. at 2378). He concluded that

any application of the favorable-termination requirement to § 1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody (as, in this case, following service of a full term of imprisonment), when exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas.

The better view, then, is that a former prisoner, no longer "in custody," may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy. Thus, the answer to Spencer's argument that his habeas claim cannot be moot because *Heck* bars him from relief under § 1983 is that *Heck* has no such effect. After a prisoner's release from custody, the habeas statute and its exhaustion requirements have nothing to do with his right to any relief.

*Id.* 118 S.Ct. at 989–90.

Justice Stevens concurred with this reasoning of Justice Souter in *Heck,* but he dissented in *Spencer* for other reasons. Justice Stevens believed that the habeas case was not moot because of collateral consequences of the parole revocation which involved such a serious charge as rape. He believed the petitioner still had "a personal stake in the outcome of the lawsuit" that could be addressed by a favorable decision in the habeas proceeding, and thus the question was not moot.

Of greater significance, however, is the fact that Justice Ginsburg in the *Spencer* case changed her opinion as to why she believed *Heck* led to a correct outcome. In her separate and critically important concurring opinion she acknowledged "I have come to agree with Justice SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody'

(people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'" *Id.* 118 S.Ct. at 990.

Thus, it is now clear that five justices of the Supreme Court would limit *Heck* and its progeny to petitioners who attempt to bring a § 1983 action directly or indirectly challenging a conviction or disciplinary matter when such plaintiffs are "in custody" and have an available federal remedy in habeas corpus. Such convicted plaintiffs cannot use § 1983 to avoid the lesson of *Preiser* that they must resort to habeas in matters affecting the fact or duration of confinement. The principal concerns behind *Preiser, Heck* and *Balisok* are (i) that the general § 1983 statute not be used to do an end run on the more specific habeas statute with its exhaustion requirement for inmates "in custody," and (ii) that federal fact-finding in a § 1983 action not be used to establish issue preclusive facts that could have collateral consequences in pending or future state court actions concerning the fact and/or duration of confinement caused by a criminal conviction, parole revocation, or prison administrative action (including disciplinary hearings).

In light of *Spencer,* there simply is not a *Heck/Balisok* issue present when a plaintiff brings a § 1983 claim when he or she is no longer "in custody." In light of Justices Stevens, O'Connor, and Breyer joining Justice Souter's concurrence in *Heck,* and Justice Ginsburg now belatedly joining that foursome in *Spencer,* the reasoning of these five Justices in *Heck* and in *Balisok* would limit the *Heck/Balisok* holdings to prisoners who have a federal habeas remedy available to them because they are still "in custody."

■ The implications of *Spencer* for a person who has been released from parole is that he or she is not precluded from bringing a § 1983 action to challenge the constitutionality of the procedures involved in the parole revocation, even if the success in that case would necessarily implicate the invalidity of the earlier revocation. In a prison context, where there has been no deprivation of good-time credits (as there was in *Preiser* and *Balisok* ) and the inmate has served whatever period of time in segregation or top-lock

that was imposed by the hearing officer, again there is no concern that a § 1983 action could be used as an end run on the habeas exhaustion requirement or for issue-preclusive effects to force a state court to reach a conclusion that the conviction or disciplinary hearing was invalid.

■ In the present case, the only sanction plaintiff received from the hearing officer was six days in top-lock.[2] This sanction had been served by the time he commenced his § 1983 action, and he was not "in custody" because of any wrongful disciplinary determination.[3] Thus, for the reasons stated above, this suit should not precluded by *Heck* and *Balisok.* Defendant Freeburn's motion to dismiss and/or for summary judgment should be denied.

## V. CONCLUSION

For the reasons stated above, it is recommended that defendant Freeburn's motion to dismiss and/or for summary judgment be denied.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D.Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ivey v. Wilson,* 832 F.2d 950, 957–58 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

---

2. Plaintiff states in his complaint that he received four days in administrative segregation. A copy of the misconduct hearing report, submitted as an Exhibit 25 to defendant Freeburn's affidavit, which is attached to defendant's first dispositive motion, states that plaintiff received six days of toplock. Whether or not plaintiff received toplock or administrative segregation, plaintiff had served the sanction imposed by the hearing officer prior to commencing this § 1983 action.

3. Because plaintiff is still incarcerated on his original conviction, he is still "in custody" with respect to that charge which he is not seeking to challenge. Yet, he is not "in custody" in the relevant sense of *Spencer* that would allow him to bring a habeas corpus action with respect to his disciplinary ticket. Any habeas claims with respect to the disciplinary hearing and sanction are "moot," as in *Spencer,* because he is no longer in the *more restrictive custody* of toplock or administrative segregation, nor in the *more extended custody* that would still face him had he lost any good-time credit. Thus, he is not "in custody" within the meaning of 28 U.S.C. § 2254 and could not bring a habeas action with respect to his misconduct ticket and its sanction.